UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM JOHNSON,

               Petitioner,

vs.                               Case No. 3:14-cv-372-J-39JBT

SECRETARY, DOC, et al.,

               Respondents.

_____

**ORDER**

**I.   STATUS**

Petitioner William Johnson challenges a 2007 (Duval County) conviction for burglary of a dwelling (count one), dealing in stolen property (count two), and false verification of ownership on pawnbroker transaction form (count three).   Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) at 1.   He raises ten grounds in the Petition, and this Court will address these grounds for habeas relief, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required.

In response, Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 16).   In support of their Response, they rely on Exhibits to Answer to Petition for Writ of

Habeas Corpus (Doc. 16).[1]  Petitioner countered this response with

his Reply Brief (Reply) (Doc. 19).[2]  <u>See</u> Order (Doc. 5).

## II.   STANDARD OF REVIEW

The Court will analyze the claims raised in the Petition

pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism

and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.]

§ 2254(d) bars relitigation of any claim 'adjudicated on the

merits' in state court, subject only to th[re]e exceptions."

<u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).  The referenced

exceptions are: (1) the state court's decision was contrary to

clearly established federal law; or (2) there was an unreasonable

application of clearly established federal law; or (3) the decision

was based on an unreasonable determination of the facts.  <u>Id</u>. at

100.

Recently, the Eleventh Circuit described the parameters for a

federal court to grant habeas relief, as limited by the provisions

of AEDPA:

---

[1] The Court hereinafter refers to the documents contained in
the appendix as "Ex."  Where provided, the page numbers referenced
in this opinion are the Bates stamp numbers at the bottom of each
page of the appendix.  Otherwise, the page number on the particular
document will be referenced.  Also, the Court will reference the
page numbers assigned by the electronic docketing system where
applicable.

[2] Petitioner provides Exhibits in support of his Reply (Doc.
19), and the Court will hereinafter refer to the documents
contained therein as "App."

if a state court has adjudicated the merits of a claim, we cannot grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "[C]learly established federal law" under § 2254(d)(1) refers to the "holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (alteration in original) (quoting Williams, 529 U.S. at 413). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in original) (quoting Williams, 529 U.S. at 413). Under § 2254(d)(2), we may grant relief only if, in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based. Brumfield v. Cain, 576 U.S. ----, 135 S. Ct. 2269, 2277 (2015).

Raleigh v. Sec'y, Fla. Dep't of Corr., No. 14-14198, 2016 WL 3563623, at *5 (11th Cir. June 30, 2016).

Also of note, the state courts' factual findings will be given a presumption of correctness unless rebutted with clear and

- 3 -

convincing evidence, 28 U.S.C. § 2254(e)(1). Moreover, the Court will apply this presumption to the factual determinations of both trial and appellate courts. See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.   PROCEDURAL HISTORY

In order to give historical context to the ten grounds presented in the Petition for habeas relief, the Court will provide a brief procedural history of the state criminal case. Petitioner was charged by information with burglary of a dwelling, dealing in stolen property, and false verification of ownership on pawnbroker transaction form. Ex. 2 at 8-9. The state filed a notice of intent to classify Petitioner as an habitual felony offender. Ex. 3.

On February 14, 2007, the trial court conducted a jury trial. Ex. 8. The jury returned a verdict of guilty as to all three counts. Id. at 333; Ex. 10. Petitioner moved for a new trial, Ex. 11 at 124-25, and the trial court denied the motion. Id. at 126; Ex. 14 at 200.

On March 28, 2007, the trial court held a sentencing proceeding. Ex. 17. The court adjudicated Petitioner guilty and sentenced him to a term of fifteen years in prison as a prison releasee reoffender, with a minimum mandatory fifteen years on count one; to a concurrent term of ten years as a habitual felony offender on count two; and to a concurrent term of five years as a

habitual felony offender on count three.  <u>Id</u>. at 224.  The court entered judgment and sentence on March 28, 2007.  Ex. 18.

Petitioner appealed his conviction, Ex. 19, and filed an appeal brief.  Ex. 20.  The state filed an answer brief.  Ex. 21. Petitioner replied.  Ex. 22.  On October 8, 2008, the First District Court of Appeal affirmed per curiam.  Ex. 23.  The mandate issued on October 24, 2008.  <u>Id</u>.

On March 31, 2009, pursuant to the mailbox rule, Petitioner filed a Motion for Postconviction Relief.  Ex. 24.  The circuit court ordered the state to file a written response.  Ex. 25.  The state filed its Response to Defendant's Motion for Post-Conviction Relief, submitting that the motion is procedurally barred as untimely and improperly filed, or alternatively, the grounds in the motion are without merit.  Ex. 26.  The circuit court, in its Order Denying Motion for Post Conviction Relief, found the post conviction motion to be timely filed, addressed the merits of the claims, and denied the motion for the reasons set forth in Section II, paragraphs A, B, C and D of the state's response.  Ex. 27 at 130-31.  The state's response is attached to the order.  <u>Id</u>. at 132-38.

Petitioner appealed.  Ex. 28; Ex. 29.  The state filed a notice that it would not file a brief.  Ex. 30.  The First District Court of Appeal, on February 16, 2011, entered an order requiring the Attorney General to show cause why the denial of the claim

raised in ground one, that counsel was ineffective for failing to object to the introduction of the hearsay testimony (which allegedly also violated the confrontation clause) of Officer Reed, should not be reversed and the cause remanded for the trial court to attach record portions refuting the claim or to hold an evidentiary hearing. Ex. 31. The state responded, requesting that the matter be remanded on ground one for an evidentiary hearing or appropriate record attachments. Ex. 32 at 3.

The First District Court of Appeal, on April 29, 2011, affirmed the denial of grounds two through eight of the Rule 3.850 motion, Ex. 33, Opinion filed April 29, 2011, at 1, but reversed and remanded for the trial court to conduct an evidentiary hearing or to attach records conclusively refuting the claim that counsel was ineffective for failure to object to the introduction of hearsay testimony of Officer Reed. Id. at 1-2. In doing so, the court said:

> Officer Reed allegedly suggested than an anonymous tipster identified the appellant as the perpetrator of the burglary or that the appellant fit the description of the anonymous witness. See Postell v. State, 398 So.2d 851, 854 (Fla. 3d DCA 1981) ("[T]he inexcapable inference from the testimony is that a non-testifying witness has furnished the police evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated. . . ."). Nothing in the record refutes that claim or the claim that he was prejudiced by counsel's failure to object.

Ex. 33, Opinion filed April 29, 2011, at 2.   Petitioner sought
rehearing, but the First District Court of Appeal denied rehearing.
Ex. 34.  The mandate issued on July 6, 2011.  Ex. 33.

Thereafter, on March 28, 2012, the circuit court entered an
Order Directing State Attorney to File a Response prior to the
court ordering an evidentiary hearing.  Ex. 36 at 152-53.  On April
25, 2012, the state filed its Response Regarding Count One(1) of
Defendant's Motion for Post-conviction Relief and stated that an
evidentiary hearing on ground one is necessary in light of the
First District Court of Appeal's decision.   <u>Id</u>. at 161.
Petitioner, on May 24, 2012, filed a Motion to Compel Evidentiary
Hearing.  <u>Id</u>. at 162-64.  On April 23, 2012, the circuit court
entered its Order Denying Defendant's Motion for Postconviction
Relief.  Ex. 35.  On July 12, 2012, the circuit court, in its
Amended Order Denying Defendant's Motion for Postconviction Relief
and Denying Defendant's Motion to Compel Evidentiary Hearing,
incorporated its Order dated November 9, 2010, denying grounds two
through eight, and denied ground one without conducting an
evidentiary hearing finding the record refutes Petitioner's claim.
Ex. 36 at 140-47.  A portion of the transcript of the trial
proceedings is attached to the court's decision.  <u>Id</u>. at 165-72.

Petitioner sought a belated appeal.  Ex. 37.  The state
responded, Ex. 38, and Petitioner replied.  Ex. 39.  On August 13,
2013, the First District Court of Appeal granted a belated appeal.
Ex. 40 at 182.  The mandate issued on August 29, 2013.  <u>Id</u>. at 181.

Petitioner filed his brief on appeal.  Ex. 41.  The state filed a notice that it would not file a brief.  Ex. 42.  The First District Court of Appeal, on January 23, 2014, per curiam affirmed.  Ex. 43. The First District Court of Appeal denied rehearing.  Ex. 44.  The mandate issued on March 18, 2014.  Ex. 43.

## IV.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In ground one, Petitioner raises a claim of ineffective assistance of trial counsel, complaining that counsel failed to object to the introduction of inadmissible hearsay testimony from an anonymous witness through the testimony of Officer T. M. Reed. Petition at 4.  Petitioner raised a similar claim of ineffective assistance of counsel in ground one of his Rule 3.850 motion.

The testimony at issue concerns the trial testimony of Officer Reed, a defense witness, on cross examination.  The defense called Officer Reed to testify that he did not uncover any evidence during his investigation that tied Petitioner to the burglary of the dwelling.  Ex. 8 at 271.  On cross, the state elicited testimony that there were two anonymous individuals who provided broad descriptions of the suspects, but were unable to make identifications.  Id. Officer Reed confirmed that one witness said he saw two black individuals, one driving a truck and the other loading televisions onto the truck.  Id. at 272.  One of the anonymous witnesses said there was a black male, approximately twenty to twenty-five years of age.  Id.  The individual also

- 8 -

provided information concerning what the suspect was wearing.  Id.
A female anonymous witness told the officer a beige truck pulled up
at about 6:30 in the morning.  Id. at 272-73.  The witness said she
saw one person loading a television with speakers on the trailer
attached to the truck and one person sitting in the vehicle.  Id.
at 273.  Officer Reed reiterated that no one made an
identification.  Id.

On re-direct, defense counsel asked Officer Reed if, at some
point during his canvass of the area, did an individual named Marco
come to his attention.  Id. at 274.  Officer Reed responded in the
affirmative.  Id.  When defense counsel made further inquiry about
Marco, the state objected and the court sustained the objection.
Id.  At side-bar, defense counsel said:

> MR. LEOMBRUNO (defense counsel):  Judge, my
> only concern is that when I first called
> Officer Reed to the stand I was very careful
> not to get into any hearsay regarding any of
> his investigation.  The State kicked in the
> door when they questioned him on cross-
> examination about all kinds of statements
> about the people he canvassed.  I think it's
> taken out of context and I think the jury now
> needs to hear what he specifically heard from
> witnesses regarding this case.
>
> THE COURT: Well, you certainly could have
> objected to anything the State asked and you
> didn't.  They are now objecting.  The
> objection is sustained.

Id. at 274-75.  Defense counsel then asked Officer Reed if any of
the unidentified witnesses ever gave him the name William Johnson
or any reason to believe that William Johnson had committed any

crimes, and Officer Reed responded in the negative.  Id. at 275.

In order to prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  Of import, the circuit referenced the applicable two-pronged standard in Strickland as a preface to addressing Petitioner's claim of ineffective assistance of counsel.  Ex. 36 at 141.  The circuit court not only recognized the applicable standard, it further noted that all that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel.  Id.

The circuit court concluded that defense counsel's conduct did not fall outside the scope of reasonable assistance because he called Officer Reed for the purpose of demonstrating Petitioner's innocence.  Id. at 142.  The court went on to find that any failure on defense counsel's part to object to the testimony elicited by the state would not have likely affected the outcome of the case, because even if considered to be out-of-court hearsay, it was harmless error not to object "because the contents of the report tended to show information gathered in the course of investigation rather than accusatory information as to Defendant's guilt."  Id.

- 10 -

at 144 (citation omitted).  As such, the court opined that the information gathered neither accused Petitioner through an anonymous tip, nor furnished evidence of Petitioner's guilt as the perpetrator.  Id.  Finally, the court determined that the evidence presented did not identify Petitioner as the culprit; on the contrary, Officer Reed's testimony bolstered the defense and "offered evidence of reasonable doubt."  Id. at 145.  As such, the court concluded that no prejudice could result from counsel's failure to object under these circumstances ("That is, even had trial counsel objected to the State's questioning, the statements in question did not point to Defendant as the perpetrator, thereby diminishing prejudice.").  Id.

Specifically, with regard to the prejudice prong, the circuit court said that Petitioner failed to demonstrate that, but for his counsel's actions in failing to object, the outcome of the proceedings would have been different.  Id. at 145-46.  The court determined that this is especially the case in light of the "overwhelming weight of the evidence" presented at trial against Petitioner.  Id. at 146.  Thus, the court made the finding that if there had been an objection and exclusion of evidence from the police report, it would not have negated the other significant evidence offered against Petitioner.  Id.

Moreover, the circuit court found that defense counsel zealously advocated for his client and the record "rebuts any allegations of ineffective assistance of counsel."  Id.  Thus,

after finding Petitioner failed to show deficient performance, the court concluded that he failed to demonstrate prejudice as required by <u>Strickland</u>.  Ex. 36 at 146.  The First District Court of Appeal affirmed.  Ex. 43.

In sum, the court determined that any error in failing to object was harmless.  In making its finding on prejudice, the court referenced the overwhelming evidence of Petitioner's guilt, including the fact that the items pawned by Petitioner matched the description and serial numbers of the victim's stolen property and that Petitioner was caught on video claiming ownership of the property and selling it.  As a result, the court concluded that even assuming counsel performed deficiently in failing to object to improper questions on cross examination, any error was harmless and did not rise to the level of ineffectiveness.

There is a qualifying state court decision and AEDPA deference is warranted.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground one because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

Finally, to the extent Petitioner complains that the circuit court failed to attach records to its order or conduct an

evidentiary hearing, as noted by Respondents, failure to attach records or hold an evidentiary hearing in a post conviction proceeding does not present a basis for federal habeas relief. Response at 24-25. This allegation presents a defect in the state post conviction process; "defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir.) (citations omitted), cert. denied, 558 U.S. 995 (2009). Therefore, the claim of a defect in the state collateral process is not a claim of constitutional dimension. Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1325-26 (11th Cir.) (recognizing that challenges to a collateral proceeding do not undermine the legality of the conviction itself; therefore, habeas relief is inappropriate), cert. denied, 562 U.S. 1113 (2010). As such, Petitioner is not entitled to habeas relief on ground one.

## B. Ground Two

In his second ground for habeas relief, Petitioner raises another claim of ineffective assistance of trial counsel. In this ground, Petitioner claims his counsel's performance was deficient and caused prejudice because counsel failed to call R. H. Bowers to testify. Petition at 5. Petitioner raised a very similar claim in ground two of his post conviction motion. The circuit court rejected this ground based on the reasons provided by the state in its response. Ex. 27.

The state, in its response, provided the following rationale for denying this ground:

- 13 -

Officer Reed was the responding officer and did the bulk of the on-scene investigation. The Defendant alleges that Zisser was ineffective for actually calling Officer Reed to the stand. Yes, in Ground Two of the Defendant's Motion, the Defendant argues that his counsel was also ineffective for not calling Detective Bowers. The Defendant's stated rationale is that Detective Bower's testimony "could have cast doubt before the jury concerning the Burglary charge in this purely circumstantially [sic] case." As it turns out, Detective Bowers made clear in his sworn deposition that he got his information from the General Offense report (which had been written by Officer Reed). The Defendant also invoked his right to remain silent when interviewed by Detective Bowers. Given these fact[s], Zisser would have known that Detective Bowers' testimony, at trial, would have been objected to as classic hearsay. Instead, if Zisser wanted to elicit the testimony that the Defendant believes was critical in his case, Zisser had to call Officer Reed. By calling Officer Reed, Zisser accomplished exactly what the Defendant would want Detective Bowers to testify to, mainly that the State's case as to the Burglary charge rested on circumstantial evidence.

. . . .

Based on the above-rationale, it is clear that Zisser's decisions regarding which witnesses to call in the Defense's case in chief were well-founded. It is also the representation hoped for when considering competent counsel for trial purposes.

Ex. 26 at 125-26. The First District Court of Appeal affirmed this

decision. Ex. 33.

This ground simply has no merit. Trial counsel's performance

was not deficient in this regard. He called Officer Reed, the

writer of the General Offense report, the source of information

- 14 -

upon which Detective Bowers' relied.   Thus, defense counsel provided the evidence to the jury through the most appropriate witness, Officer Reed.   If defense counsel had called Detective Bowers, the state most likely would have objected to "classic hearsay" testimony.   As a result, Petitioner was certainly not prejudiced by counsel's decision to call Officer Reed rather than Detective Bowers.

It should be recognized that, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.   In this instance, the record supports the trial court's conclusion that counsel made a sound tactical decision in presenting evidence to the jury and defended Petitioner well within the range of professional competence by calling Officer Reed, not Detective Bowers, to testify that there was no evidence to tie Petitioner to the burglary.  Ex. 8 at 271.

As such, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.   He is not entitled to relief on ground two of the Petition, the claim of ineffective assistance of trial counsel. Deference under AEDPA should be given to the state court's decision.   The state court's adjudication of this claim is not contrary to or an unreasonable application of *Strickland*, or based on an unreasonable determination of the facts.

- 15 -

## C.  Ground Three

In his third ground, Petitioner again raises a claim of ineffective assistance of counsel.  This time, he claims trial counsel deprived him of effective assistance by failing to call Williams Jones to testify that he could not identify the two persons pushing the shopping cart.  Petition at 6.

The third ground for habeas relief is without merit. Petitioner took the stand and admitted that he was with Curtis Jackson outside of a store on Moncrief road, and Curtis Jackson had a shopping cart filled with the stolen items and some clothes, although Petitioner contended he did not know the items were stolen and stated he was told otherwise.[3]  Ex. 8 at 217-20.  Shortly thereafter, Petitioner was videotaped at a pawn shop providing his identification and fingerprints and selling the victim's belongings.  Id. at 221.

Petitioner raised this claim of ineffective assistance of counsel in his Rule 3.850 motion.  The circuit court rejected this

---

[3] Prior to Petitioner taking the stand, the trial court conducted a colloquy to ask whether Petitioner decided to take the stand, and further inquire as to whether it was truly his decision to take the stand.  Ex. 8 at 211-12.  The trial court duly warned Petitioner that the number of prior felony convictions and misdemeanors involving crimes of dishonesty could be brought before the jury.  Id. at 212.  Even with this warning, Petitioner decided to take the stand and testified at trial.  "It is by now abundantly clear that a criminal defendant has a fundamental right to testify on his own behalf at trial."  Nejad v. Attorney General, Ga., No. 15-14856, 2016 WL 4011142, at *7 (11th Cir. July 27, 2016) (citations omitted).

- 16 -

ground, relying on the reasons provided in the state's response to the post conviction motion.  The state provided:

> As with any witness called by either the State or the Defense, the opposing side has a right to cross-examine the witness.  Many times when this happens opposing counsel will make points that benefit opposing counsel's theory of the case.  That happened in this case as well.  The door was opened for the State to cross-examine Officer Reed regarding the witnesses he interviewed at the scene. Officer Reed though did not interview anyone that actually identified the Defendant. Instead, Officer Reed's testimony primarily accomplished what both Zisser and the Defendant hoped it would.  Mainly, the jury learned that there were two suspects and that neither suspect was actually identified by a witness.  Of course, this also supported the State's theory that the Defendant committed the crime with a co-defendant and, therefore, both would be equally guilty of the crime.
>
> The same arguments apply to the Defendant's claim that William Jones should have been called.  William Jones' testimony would have simply corroborated that of Officer Reed's.  William Jones testimony is not exculpatory in nature and is actually inculpatory as it confirms the State's theory that the Defendant committed the crime with his co-defendant.  Mr. Jones testimony from the very beginning was the he saw two (2) black males pushing a shopping cart.  This is reflected in Officer Reed's report and, thus, would only serve to reinforce Officer Reed's previous testimony.

Ex. 26 at 126.  The First District Court of Appeal affirmed.  Ex. 33.

Again, Officer Reed confirmed, on the stand, that no one in his canvass of the area identified the Petitioner.  When asked if anyone gave him information that led him to believe that Petitioner

had committed any crimes, he said no.  Ex. 8 at 275.  If called, Jones would not have provided exculpatory testimony.  Indeed, his testimony would have been cumulative to Petitioner's testimony, and in some respects, to Officer Reed's.  Thus, counsel's performance was not deficient for failure to call Mr. Jones.

Even assuming *arguendo* counsel's performance was deficient, Petitioner has not established prejudice, failing to meet Strickland's prejudice prong.  Petitioner has failed to show "that it was 'reasonably likely' that, but for counsel's deficient performance, the result of the proceeding would have been different." Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 709 (11th Cir.) (per curiam) (citation omitted), cert. denied, 136 S.Ct. 114 (2015).  Thus, Petitioner is not entitled to habeas relief on this ground.

The circuit court applied the appropriate standard, and found Petitioner was not entitled to post conviction relief, and the appellate court affirmed the circuit court's decision.  Thus, the decision to deny this ground is entitled to AEDPA deference.  Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim.  The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground three.

### D.  Grounds Four and Five

In ground four, Petitioner raises a claim of ineffective assistance of counsel for failure to investigate, "depose file" and properly present the reports of Sam White, the investigator for the defense.  Petition at 7.  Petitioner raised a similar claim in the state court in ground four of his Rule 3.850 motion.  Petitioner, in his fifth ground, asserts that he received the ineffective assistance of counsel based on counsel's failure to object to the state's suppression of the victim's second deposition.  Petition at 8.  Petitioner raised this ground as ground five of his Rule 3.850 motion.  As previously noted, the circuit court rejected the motion based on the reasons provided by the state in its response.  The First District Court of Appeal affirmed this decision.  Ex. 33.

In his supporting facts for ground four, Petitioner states that Sam White was the investigator hired by Petitioner's initial counsel, Lynn Martin.  Petition at 7.  The investigator spoke to Curtis Jackson, who denied going to the pawnshop or knowing Petitioner.  Id.  Petitioner submits that the victim wrote a statement on his behalf, in which she stated her belief that Petitioner was not involved in the burglary of her house.  Id. at 8.

Upon review, Sam White wrote a letter to Lynn Martin, on September 5, 2006, stating that he met with Stephanie Johnson and she stated, after reviewing the videotape from the pawnshop, that she did not recognize either Curtis Jackson or Petitioner.  App. B.

- 19 -

When advised of Petitioner's story, Ms. Johnson "felt that William Johnson's story of how he came in contact with her property sounded believable." Id. Ms. Johnson "did not feel like" Petitioner had committed the burglary. Id. Ms. Johnson also believed that Petitioner was wrong for pawning the items, but did "not feel he was present at the time her residence was burglarized." Id. Stephine Johnson, the victim, provided an Affidavit that said she did not believe that Petitioner was one of the intruders into her house, but she was sure that he was the person who pawned her belongings. Id., Affidavit of Stephine Johnson.[4]

In his supporting facts for ground five, Petitioner states that his defense attorney re-deposed the victim, but the state filed a motion in limine seeking to prohibit the use of deposition, "taking away statements" that could have been used to defend against the burglary charge. Petition at 9. The record shows that the state brought its motion in limine regarding opinion testimony to the trial court's attention. Ex. 8 at 8. The prosecutor explained that the defense moved to re-depose the victim after the victim gave her statement to the defense investigator that she did not believe Petitioner committed the crime of burglary. Id. at 9. The court inquired as to whether the victim was an eyewitness, and the prosecutor responded no. Id. Defense counsel stated that he did not object to the state's motion "in terms of bringing in just

_____

[4] In the record, the victim is referred to as both Stephanie and Stephine Johnson.

mere opinion testimony of a lay witness." _Id_.  He did however "object to the wording of the motion that opinion testimony -- opinion testimony by lay witnesses is expressly forbidden." _Id_. He argued that it was not expressly forbidden as it would be allowed in certain circumstances.  _Id_.  He did not foresee, however, those particular circumstances arising at trial.  _Id_.

The state, in its response to the Rule 3.850 motion, addressed these two grounds and said:

> Once again, it is clear from the exhibits prevented [sic] by the Defendant in the Defendant's Motion that Zisser was within the range of reasonable representation regarding these alleged grounds as well.  The Victim in this case was not present when the Burglary occurred.  As such, it was not even possible for her to make an identification of the person(s) who actually committed that crime. Despite this fact, Lynn Martin (the attorney who represented the Defendant at one point) hired Sam White to do some additional investigation regarding the Victim's ability to identify the burglar.  Sam White showed the Victim the pawn shop video.  The Victim made clear she did not know the Defendant.  She further stated she would not recognize the alleged co-defendant (Curtis Jackson) even if she saw him.  After showing the Victim the pawn shop video (and telling her the Defendant's explanation of what happened), Sam White asked the Victim her opinion as to whether or not "[s]he felt that William Johnson's story of how he came in contact with the property sounded believable."  According to Sam White, her lay opinion was "[s]he believes William Johnson is wrong for pawning the items but does not feel he was present at the time her residence was burglarized." Notably, it appears this meeting with Sam White (where the Victim was asked to view and comment on evidence) was conducted without the State's presence or even knowledge despite the

fact that the Victim was a listed State witness.

Subsequent to this meeting with the Victim, Lynn Martin filed a motion to re-depose the Victim. This motion was actually denied on September 5, 2006. When Zisser was appointed counsel for the Defendant and (despite the Court's earlier ruling) Zisser first sent out a letter (on December 6, 2006) to Lynn Martin asking why the motion had been denied, and then filed his own motion on January 15, 2007, to re-depose the Victim. This time, the Court granted that motion, but limited the questioning to this new interview previously conducted by Sam White. In that deposition, Zisser did limit his questions based on the Court's ruling and learned that the Victim watched the video, saw the Defendant on it, did not recognize the co-defendant on it and that her opinion was the Defendant's alleged version sounded believable.

While questions regarding hearsay and lay opinions may be admissible in a deposition, they are not proper for a trial. One of the foremost reasons why lay opinion as to the Defendant's culpability is not appropriate is it actually invades the province of the jury as fact-finder. Of course, Zisser could not breach this fundamental precept of trial. While Zisser was more persuasive than previous counsel (Lynn Martin) at garnering the second deposition of the Victim, it is also clear that the testimony learned in that deposition would not have been admissible in trial. The fact that the Defendant in hindsight wanted to use the Victim's second deposition and/or the hearsay testimony of Sam White at trial does not obviate the clear case law and criminal rules preventing such improper testimony. Zisser, therefore, cannot be viewed as ineffective for failing to do what no attorney should have attempted at trial.

Ex. 26 at 126-27.

First, with respect to ground four, it is quite apparent that defense counsel's performance was not deficient for failure to further investigate and present either the testimony of the investigator or the victim. After viewing the videotape, Ms. Johnson did not recognize Petitioner or Curtis Jackson. Ms. Johnson had no personal knowledge of who committed the burglary. Thus, she would not have been allowed to testify as to her belief that Petitioner did not burglarize her house. Although Ms. Johnson signed an affidavit stating that she did not believe Petitioner was an intruder into her home, it was of no real evidentiary value to the defense as her belief or opinion would have been considered to be inadmissible under state law as improper testimony. Additionally, anything she heard about the burglary would have been inadmissible hearsay. Finally, Sam White was not a witness to the crime. He simply talked to the victim and advised her of Petitioner's story.

With respect to ground five, the record is clear that defense counsel did state some objection to the breadth of the state's motion in limine, arguing that there were limited circumstances allowing for testimony of lay witness opinion testimony. Ex. 8 at 9. Defense counsel advised the court that he did not anticipate those limited circumstances arising at this trial. Id. Indeed, as noted by the state in its response to the post conviction motion, it would invade the province of the jury to allow the victim to opine that she did not believe that Petitioner burglarized her

- 23 -

home.  She was not an eyewitness to the crime.  The trial court adopted the state's reasoning that it would invade the province of the jury to allow the introduction of lay opinion testimony with regard to the question of guilt or innocence.

The decision to deny these grounds is not inconsistent with Strickland.  "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." Marshall v. Sec'y Fla. Dep't of Corr., No. 13-13775, 2016 WL 3742164, at *9 (11th Cir. July 12, 2016) (quoting Kimmelman v. Morrison, 477 U.S. at 382).  This standard is extremely difficult to meet, and even a strong case for habeas relief will not prevail as long as the state court's contrary conclusion was reasonable.

Under these circumstances, Petitioner will not succeed on his claims of ineffective assistance of counsel.  He has failed to show deficient performance or prejudice.  With regard to these claims, he has failed to demonstrate that his counsel's performance was so deficient that it deprived Petitioner of a fair trial and a reliable result.

The First District Court of Appeal affirmed the trial court's decision to reject these claims of ineffective assistance of counsel.  The First District Court of Appeal did not give reasons for its summary affirmance; however, if there was any reasonable basis for the court to deny relief, the denial must be given

deference by this Court.  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 187-88 (2011).

With respect to these claims, deference under AEDPA should be given to the state court's decision to reject both of these grounds.  The state court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u> and its progeny.  The state court's adjudication of these claims is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  Therefore, grounds four and five are denied.

### E.  Ground Six

Petitioner, in ground six, raises a claim of ineffective assistance of counsel, claiming that counsel failed to renew his objection concerning the state striking a black juror prior to the jury being sworn.  Petition at 9.  Petitioner argues that this failure meant that the claim was not properly preserved for appellate review.  <u>Id</u>. at 10.  He complains that "trial counsel fail[ed] to make the legal argument that as a matter of law a race neutral reason can't be accepted by the courts if reason given applies to another juror of a different race who's already been seated."  <u>Id</u>.

The record shows that during voir dire, the court asked the prospective jurors whether anyone had been arrested.  Ex. 8 at 27.  Mr. Epps, a black male, stated that he had been arrested on a DUI charge.  <u>Id</u>. at 28.  Mr. Dunstatter, a white male, responded that

- 25 -

he had been arrested on a domestic battery case.  <u>Id</u>.  Both
prospective jurors stated that they thought they could be fair to
the state in this case.  <u>Id</u>.  When the state used a peremptory
strike to strike Mr. Epps, defense counsel asked for a race neutral
reason for the strike.  <u>Id</u>. at 105.  The prosecutor responded:

> MR. DORSEY:    And I'll file it with the clerk
> also.  He admitted that he had the DUI but
> he's also got like I want to say six or seven
> for arrest for possession of cocaine.  It did
> get dropped.  His date of birth matched up and
> everything like that.  He was one of the
> people who said he would have tried to prove
> himself innocent because of something he did
> do in the past and he out of nowhere
> volunteered that thing about the Olympic
> Bomber, but the main thing is you should see
> his record.  It's significant.
>
> THE COURT:    All right.  **I will grant that
> challenge based upon prior arrest record.  And
> for the record Mr. Epps is black and so is the
> defendant.**

<u>Id</u>. (emphasis added).  Mr. Dunstatter served on the jury.  <u>Id</u>. at
106.

After the jurors were selected, but before the jury was sworn,
defense counsel brought to the trial court's attention Petitioner's
complaint that he was not comfortable with the jury since there
were no black members.  <u>Id</u>. at 117.  Counsel reminded the court
that the only black juror was stricken and that he had objected to
that juror being stricken.  <u>Id</u>.  The court explained that the
Constitution guarantees no discrimination during the selection
process, but it does not guarantee that there will be a selection
of a certain number of African-American jurors.  <u>Id</u>. at 119.  The

court inquired as to the race of the victim, and was told that the victim was an African-American.  <u>Id</u>. at 118.  Petitioner stated on the record that he was uncomfortable with the situation.  <u>Id</u>. at 119.  The next day, defense counsel advised the court that he told Petitioner that he thought they had a good jury and they should proceed with the jury selected.  <u>Id</u>. at 130.  Petitioner confirmed that he decided not to request a bench trial and would go forward with the jury trial.  <u>Id</u>.  Thereafter, the jury was sworn.  <u>Id</u>. at 130-31.

The state, in its response to the Rule 3.850 motion, addressed this issue:

> The Defendant claims that Zisser was ineffective for not objecting to the State's strike on a black juror (Mr. Epps).  It should, however, be noted that Zisser went so far as to actually renew that exact objection in his Motion for New Trial.  That said, the facts themselves make it clear that a peremptory strike of Mr. Epps was absolutely appropriate and, even if no *Neil* Challenge had ever been raised, it would be an understandable decision by a trial attorney. The purpose of trial is not to belabor the issues or object even when there is no valid legal purpose.  Mr. Epps' own answers to questions made it obvious that there were race-neutral reasons for his exclusion.  For instance, Mr. Epps testified that he was accused of something he did not do, that he went so far as to try to prove himself innocent, and he even volunteered the incident involving the Olympic bomber as an analogy. With this in mind, Mr. Epps made the candid confession that it was hard to say how it was going to make him feel during trial.  Mr. Epps also had eight (8) prior arrests, including a Felony Possession of Cocaine charge that was dropped.  These are the types of statements

and concerns that rise to the level of a Cause Dismissal and are the foundation of a race-neutral decision to strike any juror.

The Defendant notes that Mr. Dunstatter had a prior criminal record and, therefore, this must be the basis of Zisser's ineffective counsel. Mr. Dunstatter, however, had a prior record consisting solely of a misdemeanor where he pled guilty to his crime and adjudication was withheld. Mr. Dunstatter also stated he could be a fair juror. None of the concerns voiced by Mr. Epps were made during Mr. Dunstatter's questioning. Simply put, it was clear Mr. Dunstatter could sit as a fair juror in the Defendant's case and there was a significant risk that Mr. Epps could not.

Ex. 26 at 128. The trial court adopted the state's reasoning in denying this claim. Ex. 27. The First District Court of Appeal affirmed this decision. Ex. 33.

As noted by Respondents in their Response, there is a fundamental flaw in Petitioner's claim, that is, prospective jurors Epps and Dunstatter were not similarly situated. Response at 54. When asked if he had been arrested, Mr. Dunstatter accurately responded that he had been arrested for a single domestic battery charge. Mr. Epps, on the other hand, failed to fully and accurately respond to the question about prior arrests. He had a very significant arrest history that he failed to reveal during voir dire. Although he did admit that he had been arrested on a DUI charge, the state, after making its peremptory challenge, advised the court that Mr. Epps had been arrested six or seven times for possession of cocaine. Therefore, this prospective juror

was not forthright during the voir dire proceeding, and, as a result, the court granted the challenge based on Epps' history of prior arrests.

This misrepresentation of an extensive arrest record provided the valid race-neutral reason for the state's exercise of a peremptory challenge. Thus, defense counsel's failure to renew his objection to the state's use of peremptory challenge would not amount to deficient performance under these circumstances. Indeed, the decisions made by counsel were not objectively unreasonable, particularly when counsel was convinced they had selected a good jury and should proceed to trial with the jurors selected. Finally, Petitioner has not shown prejudice because there is no reasonable probability that the outcome would have been different even if his counsel had performed as Petitioner alleges he should have done.

Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice. Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts. As such, Petitioner is not entitled to habeas relief on ground six.

**F.  Ground Seven**

In his seventh ground for relief, Petitioner claims a Sixth Amendment violation based on the alleged ineffective assistance of counsel.  Petition at 11.  Generally, he contends that his attorney failed to object to several improper or misleading statements made by the prosecutor, particularly during closing argument.  Id.

Petitioner asserts that the comments made by the prosecutor misstated the facts and were improper.  Petition at 11.  He focuses on a few specific instances to support his claim, as referenced in his Reply at 19-22.  The first instance is:

> Now, I apologize if I was confused.  It just didn't make any sense to me, it was telling, because the truth of the matter is I always knew there were two people that did the robbery [sic] and they were in a truck.  They got into a truck.  So you caught this individual by his own witness in a lie. Curtis Jackson didn't come up to -- Calvin [sic] Jackson didn't [come] up to him in a shopping cart because he already had a truck. That doesn't make any sense.

Ex. 8 at 285-86.  Petitioner asserts this comment evidenced the prosecutor giving his personal opinion on key facts in dispute when the facts the prosecutor espoused were not in evidence.  See Reply at 20.

The second portion of the prosecutor's closing argument at issue is: "evidence was created on the stand today."  Id. at 313. The prosecutor continued: "[i]t wasn't there until today when he took the stand and he told you a false story that clearly conflicts with  his own witness, Officer Reed.  He created evidence."  Id.

Petitioner contends these statements amounted to improper comments on his right to remain silent. See Reply at 20-21.

The third portion mentioned is: "[i]f you'll lie about one thing, you'll lie about anything." Ex. 8 at 289. Petitioner complains that the prosecutor called his testimony false. See Reply at 20-21. The fourth portion of the closing argument at issue is: "[n]ow, that witness, Officer Reed, has to tell you the truth." Ex. 8 at 286. Petitioner challenges this statement as improperly vouching for the testimony of Officer Reed. See Reply at 20.

The final portion at issue is: "[a]t some point it just becomes unfair to victims of burglaries for people, when all the evidence pointed to you to just walk away from it." Ex. 8 at 288. Petitioner complains that this statement misstates the facts, seeks sympathy, inflames the jury, and undermines Petitioner's credibility by calling him a liar. See Reply at 20, 22.

Respondents, in their Response, reference Florida law, which provides for wide latitude during closing argument and allows for comment on the evidence and some contention as to the conclusions that should be drawn from the evidence. Response at 61. They also reference Florida law concerning invited response. Id. at 62. Of import, due to the fact that Petitioner testified before the jury, they also reference state law allowing for the attack of credibility of a defendant once he takes the stand, just like any other witness. Id.

- 31 -

Petitioner presented this claim of ineffective assistance of counsel in his post conviction motion as ground seven for relief. Ex. 24.  The state addressed this claim in its response, Ex. 26, and the court adopted the reasoning of the response.  Ex. 27.  The response provides:

> Likewise, Zisser would also be aware that the purpose of closing argument is to literally make arguments on behalf of your case.  The State did so.  The State is entitled to both argue the facts and make reasonable inferences from those facts.  The evidence (even the Defendant's own testimony) supported the arguments made by the State.  This is particularly so in circumstantial evidence cases.  Zisser presented his zealous arguments on behalf of the Defendant, the State presented its case, the jury deliberated and (as they are entitled to do) came to a well-reasoned decision that the Defendant was guilty of his crimes.  The Defendant took the additional step of appealing that verdict.  The First District did not note any errors fundamental or otherwise) requiring a new trial, and, on October 8, 2008, issued its Order that the trial verdict was "Per Curiam Affirmed".

Ex. 26 at 128.

The court addressed whether the prosecutor made misstatements of the facts.  Not only did the circuit court reject Petitioner's claim of ineffectiveness, the First District Court of Appeal affirmed.  Ex. 27; Ex. 33.

In order to constitute a fundamentally unfair proceeding, the prosecutor's remarks must have made the difference in the jury's decision.  Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("whether the improper remarks were of sufficient magnitude

to undermine confidence in the jury's decision"), <u>cert</u>. <u>denied</u>, 480
U.S. 911 (1987).  More importantly, mere inaccuracies are simply
not enough if the inaccuracies did not mislead the jury.

The referenced statements by the prosecutor did not mislead
the jury and counsel was not ineffective for failing to object to
these comments.   These statements, even if improper, did not
vitiate the entire trial, and counsel's failure to object to these
statements amounted to, if any error, harmless error.

This Court in <u>Dailey v. Sec'y, Fla. Dep't of Corr.</u>,
8:07-CV-1897-T-27MAP, 2012 WL 1069224, at *6 (M.D. Fla. Mar. 29,
2012) imparted that,

> Under Florida law, trial counsel is
> permitted wide latitude in arguing to a jury.
> <u>Breedlove v. State</u>, 413 So.2d 1 (Fla. 1982).
> Federal law likewise permits wide latitude in
> this regard. To prevail under federal law, a
> petitioner must show that the comments so
> infected the trial with unfairness as to make
> the resulting conviction a denial of due
> process. <u>Darden v. Wainwright</u>, 477 U.S. 168,
> 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). <u>See</u>
> <u>also</u> <u>Cargill v. Turpin</u>, 120 F.3d 1366 (11th
> Cir. 1997) (improper remarks will compel
> habeas corpus relief only if they are so
> egregious as to render the proceedings
> fundamentally unfair). Upon consideration, it
> can be reasonably concluded that none of the
> comments so infected the trial with unfairness
> as to make the resulting conviction a denial
> of due process. <u>See</u> <u>Donnelly v. DeChristoforo</u>,
> 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d
> 431 (1974); <u>Cargill v. Turpin</u>, 120 F.3d 1366,
> 1379 (11th Cir. 1997) (if reviewing court is
> confident that, absent improper prosecutorial
> remarks, the jury's decision would have been
> no different, proceeding cannot be said to
> have been fundamentally unfair, and habeas
> relief is not warranted). In light of the

> evidence which established his guilt of the
> crime for which Petitioner was found guilty,
> any claimed constitutional error in the
> prosecutor's remarks had no substantial and
> injurious effect or influence in determining
> the jury's verdict. <u>Brecht v. Abrahamson</u>, 507
> U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353
> (1993).

Upon review, the failure to object to the prosecutor's
argument did not constitute deficient performance by defense
counsel. Furthermore, Petitioner demonstrates no prejudice from
the claimed deficient performance. A fair reading of the
prosecutor's argument demonstrates that he was broadly recounting
the evidence that had been presented by the state's witnesses and
making a legitimate argument, based on the testimony presented at
trial. This is particularly so since Petitioner took the stand.

In addition, the record shows that defense counsel addressed
many of these matters in closing argument rather than through
objections to the prosecutor's closing argument. He challenged the
sufficiency of the evidence presented by the state, arguing much of
it was based on "presumptions and inferences alone." Ex. 8 at 297.
Defense counsel argued that the jury should not surmise or infer
that Petitioner should have known that the items were stolen
because of the amount of money he received from the pawn shop
because pawn shops do not ordinarily pay full value. <u>Id</u>. at 299-
300.

Defense counsel made a very effective attack on the state's
burglary case. <u>Id</u>. at 300-301. He specifically addressed the

circumstantial evidence and the testimony concerning anonymous individuals referring to two people and a truck outside of the victim's house:

> Nobody saw Mr. Johnson go into that house, no one saw Mr. Johnson come out of that house. No one took Mr. Johnson's fingerprints in that house.  There is no link to that burglary. Think about the testimony of Stephanie Johnson.  She told you her house was burglarized.  I told you in opening statement we agree her house was burglarized.  What did she tell you?  I asked you who was at your house that day.  Curtis Jackson was at my house that day.  Was William Johnson there? No.  Do you know William Johnson?  No.  Ever seen him before?  No.  You got some person there, you got William Johnson not there. Sure, there was a canvass of the neighborhood. Some people saw some things.  Two people outside a house packing up a trunk [sic].  Two people in an entire neighborhood.  How many possibilities of other people could there have been?

Id. at 301.  Finally, defense counsel countered the state's contention that Petitioner was a liar.  Id. at 305.

Of note, the evidence in this case against Petitioner was certainly quite damaging.  Petitioner was videotaped selling the victim's personal property shortly after the burglary.  Not only was he videotaped, he provided both identification and fingerprints to the pawn shop employee.  Both the physical evidence and the bulk of the testimonial evidence were against him.  Although his own testimony supported his version of the events and the testimony of Officer Reed showed there was no physical evidence or eyewitness testimony linking Petitioner to the inside of the victim's house,

the jury determined that the state presented evidence beyond a reasonable doubt that Petitioner committed the charged offenses.

Under these circumstances, Petitioner will not prevail on his claim of ineffective assistance of counsel.  He has failed to show deficient performance or prejudice.  Indeed, he has failed to demonstrate that his counsel's performance was so deficient in this regard that it deprived Petitioner of a fair trial and a reliable result.  Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998), cert. denied, 527 U.S. 1025 (1999).  Therefore, Petitioner has failed to satisfy both prongs of the Stickland test.  As such, Petitioner has not met his burden of showing that the state court's resolution of this claim was an unreasonable application of controlling Supreme Court precedent.  Thus, ground seven is due to be denied.

## G.  Ground Eight

In his eighth ground claiming ineffective assistance of counsel, Petitioner contends the cumulative errors and omissions of counsel are sufficient to constitute the ineffective assistance of counsel under the Sixth Amendment.  Petition at 12.  Since none of Petitioner's grounds claiming ineffective assistance of counsel provide a basis for habeas relief, the cumulative effect of these grounds certainly does not provide any foundation for granting habeas relief.

When Petitioner presented this ground to the trial court in ground eight of his post conviction motion, the court rejected it based on the reasons provided by the state in its response.  The state, in countering Petitioner's claim that the cumulative errors and omissions of counsel constitute ineffective assistance of counsel, fully addressed this claim and said:

> In addition to the many compelling arguments listed above, there is still ample other evidence of Zisser's competent representation in this case.  For instance it was Zisser's office (not Lynn Martins') that took the depositions of Stephnia [sic] Johnson Shatera Wilkerson, Detective Bowers, Olivea Farley-Burke, Alexander Chambers, and William Jones.  It was Zisser who filed the Defense Requested Jury Instruction #1 in hopes of overcoming the legal presumptions regarding the Defendant's guilt in this case.  It was Zisser who filed a Motion for New Trial on February 22, 2007, and then followed that up with a lengthy Memorandum of Law in Support of Motion for New Trial Previously Filed.  These are all hallmarks of an attorney who his [sic] putting forth a compelling and significant effort on behalf of a Defendant's case.
>
> While the Defendant may not agree with the laws and rules of the State of Florida, Zisser himself is bound to practice within their confines.  He did so in a professional and adequate fashion throughout the case.  With this in mind, it is evidence that Zisser complied with the first prong of *Strickland* and rebuts the Defendant's contention that Zisser's "performance was outside the range of reasonable professional assistance."  At this point, there is no need to even consider the second prong enunciated in Strickland, but even so it [is] also clear that the Defendant has failed to show how Zisser's alleged deficient performance "prejudiced the defense, that is, there is a reasonable probability

> that the outcome of the proceeding would have
> been different, absent counsel's deficient
> performance."  The above-referenced arguments
> clarify that, even if Zisser had done
> everything prayed for in the Defendant's 3.850
> Motion, there is no reasonable probability
> that the outcome would have changed in any
> way.  Furthermore, there is not a need for the
> Court to conduct an evidentiary hearing on the
> Defendant's claims as they are conclusively
> rebutted by the record and exhibits presented
> so far.

Ex. 26 at 129.  The First District Court of Appeal affirmed the decision per curiam.  Ex. 33.

Upon review, this decision is entitled to deference under AEDPA.  Petitioner is not entitled to relief on ground eight of the Petition because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Alternatively, if Petitioner's ineffective assistance of counsel claims are insufficient individually, raising them cumulatively does not render them sufficient.  Robertson v. Chase, No. 1:07-CV-0797-RWS, 2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (citations omitted), report and recommendation adopted by No. 1:07-CV-797-RWS, 2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), affirmed by 506 F. App'x 951 (11th Cir. 2013), cert. denied, 134 S.Ct. 93 (2013).  As such, the Court finds the cumulative deficiencies of counsel claim is without merit:

- 38 -

> As set forth above, [Petitioner] has not
> demonstrated error by trial counsel; thus, by
> definition, [Petitioner] has not demonstrated
> that cumulative error of counsel deprived him
> of a fair trial. See Yohey v. Collins, 985
> F.2d 222, 229 (5th Cir. 1993) (explaining that
> because certain errors were not of
> constitutional dimension and others were
> meritless, petitioner "has presented nothing
> to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied,

531 U.S. 849 (2000).

In this regard, since there were no errors of constitutional
dimension, the cumulative effect of any errors would not subject
Petitioner to a constitutional violation. See Miller, 200 F.3d at
286 n.6. Therefore, the Court finds that Petitioner is not
entitled to relief on the basis of this claim of ineffective
assistance of counsel alleging the cumulative errors of counsel.

## H.  Ground Nine

In the ninth ground of the Petition, Petitioner claims that
the trial court erroneously denied the motion for judgment of
acquittal on the burglary charge. Petition at 13. In support of
this claim, he contends that the evidence presented at trial was
insufficient because it failed to show that he entered the victim's
home. Id. On direct appeal, Petitioner claimed that the circuit
court erroneously denied a motion for judgment of acquittal on the
burglary charge. Ex. 20 at i. The First District Court of Appeal
per curiam affirmed. Ex. 23.

Of import, the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722 (1991). Therefore, this Court will not reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Since this ground presents a state law claim complaining about a ruling by the trial court, Petitioner is not entitled to federal habeas corpus relief as there has been no breach of a federal constitutional mandate. Indeed, the federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992).

A claim of trial court error in denying of a motion for judgment of acquittal presents a state law claim. In order to rise to the level of a claim of constitutional dimension, the petitioner must articulate the constitutional theory serving as the basis for relief. For example, a petitioner may exhaust a claim of constitutional dimension if it is asserted that the evidence was insufficient to support the conviction, and as a result of the deficiency, there was a violation of due process of law.

Apparently, Petitioner is now attempting to raise a claim of constitutional dimension, a due process deprivation under the Fourteenth Amendments based on the insufficiency of the evidence to sustain his conviction for burglary. Respondents urge this Court to find that the due process claim is unexhausted and procedurally defaulted. Response at 69-72. Upon review, the due process claim is unexhausted and procedurally defaulted because, although Petitioner raised this claim of trial court error on direct appeal, he failed to present it in the federal constitutional sense.

It is a well accepted axiom that a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010). There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). If cause is established, a petitioner is required to

demonstrate prejudice.   In order to demonstrate prejudice, a
petitioner must show "that there is at least a reasonable
probability that the result of the proceeding would have been
different had the constitutional violation not occurred."   <u>Owen</u>,
568 F.3d at 908.

In the alternative, a petitioner may obtain review of the
merits of a procedurally barred claim if he satisfies the actual
innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298
(1995).  This gateway is meant to prevent a constitutional error at
trial from causing a miscarriage of justice and "'the conviction of
one who is actually innocent of the crime.'" <u>Kuenzel v. Comm'r,
Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per
curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert</u>. <u>denied</u>, 133 S.Ct.
2759 (2013).

On direct appeal, Petitioner claimed that the trial court
erred in denying the motion for judgment of acquittal when
considering the only competent proof of Petitioner committing the
burglary was the inference of guilt derived from the possession of
recently stolen property and there was a reasonable explanation for
the possession of the property provided by the defense.  Ex. 20 at
13.  Of note, there is no mention in the appellate brief of a
violation of due process of law or a federal constitutional
violation, and there is no reference to cases with decisions
finding a due process violation.

Respondents assert that Petitioner failed to advance his due process claim in the state court proceedings. Response at 72-73. This Court must ask whether the constitutional claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004). Upon review, Petitioner failed to fairly present the substance of a due process claim to the state courts. Although he may be attempting to couch his claim in terms of denial of due process of law, on direct appeal he asked whether the circuit court erroneously denied the motion for judgment of acquittal on the burglary charge. Ex. 20 at 13.

Therefore, the record before the Court supports Respondents' assertion that Petitioner did not exhaust his federal due process claim in the state courts. Indeed, the record shows that Petitioner exclusively relied on state law grounds and cases and he substantively argued Florida law in his appellate brief. Of import, he did not alert the state courts to the federal nature of his claim. Since he failed to apprise the state court that the ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment, see Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) (per curiam) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.")

(citation omitted), <u>cert</u>. <u>denied</u>, 543 U.S. 842 (2004), the Court finds the due process claim is unexhausted and procedurally defaulted.

To the extent Petitioner is now trying to raise a due process claim pursuant to the Fourteenth Amendment of the United States Constitution, such a claim was not exhausted in the state court system. Therefore, the due process claim is procedurally barred from federal habeas review. Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Also, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Petitioner is not entitled to habeas relief on ground nine.

## I. Ground Ten

In his tenth and final ground, Petitioner claims the circuit court erroneously permitted the state to excuse a black juror based upon the criminal record of that juror when the state failed to excuse another juror, who was white, who also had a criminal record. Petition at 13. The record demonstrates that Petitioner is a black male and the victim is a black female.

Petitioner raised this ground on direct appeal. Ex. 20 at ii, 25-26. In his brief, Petitioner claimed that the reason provided was a pretext, evidenced by the state's failure to challenge a white juror who had a criminal record. <u>Id</u>. at 26. The state, in responding, first asserted that Petitioner failed to properly

- 44 -

preserve this ground, and alternatively addressed the merits of the claim asserting that Mr. Epps was not similarly situated to Mr. Dunstatter.  Ex. 21 at 34-41.  The First District Court of Appeal affirmed.  Ex. 23.

The United States Supreme Court provides guidance:

> When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. <u>Cf</u>. <u>Harris v. Reed</u>, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

<u>Harrington v. Richter</u>, 562 U.S. at 99.

Therefore, under these circumstances, it is presumed that the First District Court of Appeal adjudicated this claim on its merits.  Thus, there is a qualifying state court decision pursuant to AEDPA.  In order to obtain habeas relief, Petitioner must meet the requirements of 28 U.S.C. § 2254(d):

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

<u>Harrington v. Richter</u>, 562 U.S. at 100.

The state court's decision regarding the peremptory strike of Mr. Epps was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  An explanation follows.

To evaluate an Equal Protection Clause claim concerning the use of peremptory challenges, there is a three-part process set forth in Batson v. Kentucky, 476 U.S. 79 (1986):

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98, 106 S.Ct. 1712. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Id., at 98, 106 S.Ct. 1712.

Miller-El v. Cockrell, 537 U.S. 322, 328-29 (2003).

Petitioner asserts that the reason for striking Mr. Epps was pretextual, and the trial court erred in failing to critically evaluate the genuineness of the reasons for the strike.  The prosecutor struck Mr. Epps, expressing his concern that Mr. Epps failed to reveal six or seven prior arrests.  The record shows that during voir dire, the court asked whether anyone on the panel had "ever been arrested."  Ex. 8 at 27.  Mr. Dunstatter, a white male, responded to that question by saying yes, for a domestic battery case.  Id. at 28.  Mr. Epps, a black male, indicated to the court

that he had been arrested.  Id. at 27-28.  When the court asked him to explain, Mr. Epps said "[i]t was a DUI charge."  Id. at 28.  Mr. Epps failed to mention his other arrests.  The prosecutor brought these numerous unmentioned arrests to the attention of the court in making its peremptory challenge to Mr. Epps.  The court stated that it allowed the challenge based on the prior arrests.

Petitioner contends there was a Batson violation, and the "[t]he Equal Protection Clause forbids a prosecutor from striking potential jurors solely on account of their race."  United States v. Walker, 490 F.3d 1282, 1290 (11th Cir. 2007) (citing Batson v. Kentucky, 476 U.S. 79, 86 (1986)), cert. denied, 552 U.S. 1257 (2008).  Petitioner asserts that the peremptory challenge of Mr. Epps was exercised on the basis of race; however, the prosecutor articulated a race-neutral reason for the strike.  "Under Batson, almost any plausible reason can satisfy the striking party's burden, as long as the reason is race or gender neutral."  United States v. Walker, 490 F.3d at 1293.  Moreover, "[c]ourts have upheld reasons deemed to be superstitious, silly, or trivial, as long as they are race or gender-neutral."  Id. (citing Purkett v. Elem, 514 U.S. 765, 768 (1995)).

In the case at bar, the prosecutor stated he was concerned that Mr. Epps failed to reveal his numerous arrests.  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  Hernandez v. New

- 47 -

<u>York</u>, 500 U.S. 352, 360 (1991) (plurality opinion).  Certainly, this is a genuine, credible non-racial reason that was properly accepted by the trial judge.  In sum, purposeful discrimination was not shown.

Finally, upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, Petitioner is not entitled to habeas relief on his tenth ground.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[5]  Because this Court

---

[5] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 31st day of August, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/18
c:
William Johnson
Counsel of Record

---

jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

- 49 -